IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRENDA D. GLENN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 06-033-JPG** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT and RECOMMENDATION</u>

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

In accordance with **42 U.S.C. § 405(g)**, plaintiff Brenda D. Glenn seeks judicial review of the final agency decision finding that she is not disabled and denying her Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## <u>Procedural History</u>

Plaintiff filed an application for SSI on May 27, 2003, alleging disability beginning on April 30, 2003. She claimed disability due to pain and numbness in her left leg, depression, and anxiety. (Tr. 65-67).

The application was denied initially and on reconsideration and, at plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) George A. Mills, III, on August 10,

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2005.  (Tr. 238-272).   ALJ Mills denied the application for benefits in a decision dated September 8, 2005.  (Tr. 10-18).  Plaintiff's request for review was denied by the Appeals Council, and the September 8, 2005, decision became the final agency decision.  (Tr. 3-5).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff raises only one issue.  She argues that the ALJ gave too much weight to the evaluation by a physical therapist, and too little weight to the opinion of her treating physician, Dr. Tahira Yasmeen

## The Evidentiary Record

The court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record, focusing on the evidence most relevant to the issue raised by plaintiff.

**1.     Earnings Records**

Plaintiff had no earnings at all in the years 1993, 1994, and 1995.  She earned $1,397.01 in 1996 and $2,117.38 in 1997.  She earned less than $300.00 per year from 1998 to 2001.  She had earnings of $3,181.13 in 2002.  She claims disability beginning on April 30, 2003.  She had no earnings in 2003, 2004, or 2005.   (Tr. 69).

**2.     Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Gary J. Szczeblewski  (Tr. 241).

Brenda Glenn was 42 years old at the time of the hearing.  She was 5'6" tall, and weighed 132 pounds.  (Tr. 243).  She was separated from her husband and lived with her four sons, who ranged in age from 10 to 20 years old.  (Tr. 243-244).  She has a tenth grade education, but reads at a sixth grade level.  She does not have a GED.  (Tr. 245).

Plaintiff testified that she last worked in April, 2003. . (Her earnings records reflect no income at all in 2003. Tr. 69.) Plaintiff's testimony was vague on which job she held during which period. She said that she worked as a waitress at a country club, at a Hardee's, and cleaning boats at a factory. (Tr. 246-248). Her main employment has been as a waitress. (Tr. 248).

Ms. Glenn had a car accident in 1998, followed by back surgery in which a "cage" was put in at L-5. She subsequently had another car accident. (Tr. 248-249). She also has depression and anxiety, and she feels pressured. (Tr. 248). She takes Flexeril for pain. She is allergic to other pain medications. (Tr. 250). Flexeril makes her sleepy. (Tr. 252).

She has pain in her back and numbness and tingling down her left leg. (Tr. 251). Ms. Glenn testified that she can walk only one-half to one block, can stand for only 15 or 20 minutes, and cannot bend over, stoop, or squat "without it pulling severe." (Tr. 253). She has no problem making a fist. (Tr. 254). She sometimes has numbness in her arms, even though "they said it shouldn't affect that." (Tr. 255). If she lifts a gallon of milk, she gets pressure in her back; it feels like her "back is splitting." (Tr. 255-256). She has trouble sitting because she feels like she is in a "stiff mode." (Tr. 256).

She can sit for less than six hours out of eight, and must move around to try to get comfortable. She lays down. There is no comfortable position for her. (Tr. 263-264.)

She smokes 5 or 6 cigarettes a day, more if she gets nervous. (Tr. 256). She watches some television. (Id.) She does not sleep well. She testified she is up every hour. (Tr. 257). She was asked to describe a typical day. She said she gets up around 4:30 or 5:00 a.m., goes outside and walks around, and then comes back in and sits. Her kids get themselves ready for school. Her oldest son does all the cooking. Her sons do all the laundry and housework. She does nothing but sit. She spends a lot of her time crying. She has no hobbies or activities. She

does not have a lot of friends. (Tr. 258-259).

Her pain is in her low back. Bending or lifting increases her pain and makes her stiff. It feels like her back "is ripping." (Tr. 261).

She has seen a counselor for her anxiety, but has not gone back because of the cost. She has panic attacks and is depressed because she can't do anything. (261-262).

**3.      Testimony of Vocational Expert**

Lisa Courtney testified as a vocational expert. Her c.v. is at Tr. 54. Plaintiff had no questions for her and voiced no objections to her qualifications. (Tr. 271).

The expert testified that it was doubtful whether plaintiff's previous work rose to the level of substantial gainful activity. (Tr. 266). Her previous work was light or medium and unskilled or semi-skilled. (Tr. 265-266).

In response to a hypothetical, the VE testified that such a person could perform the following work at the light, unskilled level: inspector (2,000 jobs), assembler (2,500 jobs), and hand-packer (1,800 jobs). A second hypothetical which assumed more limitations drew the opinion that there are significant numbers of sedentary hand packers, inspectors and assembly jobs which she could do. (Tr. 270).

The VE also opined that, if she were to assume that Ms. Glenn's testimony were completely credible, she would not be able to perform any of the work which the expert had identified. (Tr. 271).

**4.      Medical Records - Dr. Yasmeen**

Dr. Yasmeen's records from June 30, 2003, through January 2, 2004, indicate that she saw plaintiff on about 5 office visits during that period. (Tr. 206-214). The records include reports of x-rays of the low back from June 5, 2003 (Tr. 215), March 29, 2004 (Tr. 209), and June 2, 2004 (Tr. 206). All of these radiology reports state that the cage device at L4-L5 is in the

disc space, and that the other disc spaces are maintained.  There is some narrowing at the L4-L5 level, but the last film shows that the vertebral bodies at L4-L5 are in anatomical position.

On the first visit of June 3, 2003, plaintiff told Dr. Yasmeen that she had suffered a herniated disc at L4-L5 in a car accident, and that Dr. Schoedinger did surgery in 1999 or 2000.  She continued to have low back pain after surgery, and sometimes had pain radiating down the left leg.  She was "able to walk around and does her household chores."  (Tr. 217).  She also related that she was depressed.  On examination, Dr. Yasmeen described her as looking comfortable and in no distress.  She had no significant tenderness in the low back, and her reflexes and gait were normal.  Straight leg raising was negative on the right side to 45.  Motor power was 5/5 on both sides and light touch sensation was intact.  (Tr. 218).

An MRI was done at Dr. Yasmeen's order on April 2, 2004, at Herrin Hospital.  (Tr. 208).  Dr. Yasmeen's note of March 29, 2004, states that Ms. Glenn told her that she had a second car accident 3 days previously, and that Ms. Glenn requested an MRI "because of her previous history of problem."  (Tr. 210).  Ms. Glenn told Dr. Yasmeen that she had been "doing well until this recent motor vehicle accident when her symptoms started again."  (Id.)   Plaintiff denied any acute injuries and had not gone to the emergency room after the accident.  She stated she had pain in the low back radiating down to the left leg, with numbness and tingling in the left leg.  A cervical x-ray taken on that date was completely normal.  An x-ray of the lumbosacral spine showed no fractures or "destructive process."  (Tr. 209).  The cylindrical graft was in place and "well-positioned."  There was some disc space narrowing at L4-L5, but all the other interspaces were well-maintained, and the vertebrae were "intact and normal in appearance."  (Tr. 209).

The MRI showed a "broad based disc bulge at the L3-L4 level which narrows the central canal but causes no true central canal stenosis."  There was "no obvious neuroforaminal

narrowing at this level."  (Tr. 208).

Plaintiff saw Dr. Yasmeen on April 19, 2004.  Ms. Glenn again complained of low back pain radiating down the left leg, with associated numbness and tingling.  (Tr. 207).  Examination showed no significant tenderness over the lumbosacral area, gait was normal, motor power was 5/5 bilaterally, and light sensation was intact.  Straight leg raising was limited to 10 degrees.  Dr. Yasmeen referred her to a neurosurgeon.  There is no indication that plaintiff was actually seen by a neurosurgeon after that date.

After the hearing, plaintiff's counsel submitted additional records showing that, on December 6, 2004, plaintiff saw Dr. Yasmeen for back pain and inability to sleep.  (Tr. 227).  She was in no distress, and again showed no significant tenderness over her lumbosacral spine.  She was moving all extremities and sensation was grossly intact.  Dr. Yasmeen encouraged her to see the doctor who had performed her previous surgery.  Ms. Glenn last saw Dr. Yasmeen on April 11, 2005, for right ear pain.  There is no mention of her back.  (Tr. 225).

**5.**     **Consultative Examination - Harry J. Deppe, Ph.D.**

Dr. Deppe performed a psychological examination at the request of the Bureau of Disability Determinations Services on September 29, 2003.  (Tr. 201-205).  As plaintiff has not challenged the findings regarding her mental impairments, the court will not go into great detail regarding the psychological evaluation.  Deppe concluded that she had no impairments in her ability to relate to others or her ability to understand and follow simple instructions.  He also concluded that her ability to maintain attention required to perform simple, repetitive tasks and her ability to withstand the stress and pressures of day-to day work activity were only "fair.  He concluded that she had adjustment disorder, with mixed emotional features.  (Tr. 204).

With regard to her physical condition, Deppe noted that Ms. Glenn told him that she had a lot of pain in her back and leg since a car accident and back surgery about 2 years previously.

-6-

She told him that she had worked as a waitress for years but could no longer do so because she could not stand on her feet due to leg and back pain. She told him that, "I watch a lot of TV and I see some friends and I try to do some housework and that's about it."

**6.     State agency physician reports**

On October 14, 2003, Dr. F. Paul LaFata completed a Physical Residual Functional Capacity Assessment based on his review of the medical records. (Tr. 114-121). He noted that she had narrowing and marginal osteophyte formation at L4-L5 due to post-surgical changes, but the vertebral alignment was well-maintained. He found that she could occasionally lift up to 20 pounds and frequently lift up to 10 pounds, and that she could stand/walk for 6 out of 8 hours and sit for 6 out of 8 hours. Her ability to push/pull was unlimited and she had no manipulative limitations. She had no postural limitations except that she should perform frequent climbing due to her low back condition.

**7.     HealthSouth Functional Capacity Evaluation, September 12, 2000**

Ms. Glenn was referred to HealthSouth for evaluation by her surgeon, Dr. George Schoedinger. The evaluation was performed on September 12, 2000. (Tr. 122-180.) After extensive testing, which is described in the report, the physical therapist concluded that plaintiff had the residual functional capacity to do light work.

**8.     Dr. Yasmeen - Statement of Ability to Do Work-Related Activities**

Dr. Yasmeen completed an assessment report on July 25, 2005. (Tr. 221-224). She stated that Ms. Glenn could lift less than 10 pounds, could stand less than 2 hours, must alternate sitting and standing, could never kneel or crouch, and could only occasionally climb, balance, crawl, or stoop.

**Applicable Standards**

To qualify for disability insurance benefits, a claimant must be "disabled."  "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**  A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the Court must determine not

-8-

whether plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See,** ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**  In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it.  ***Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)**.

## Analysis

The ALJ properly followed the five-step inquiry.  He found that plaintiff has severe impairments, but that her impairments do not meet or exceed a listed impairment.  Plaintiff does not challenge this finding.

The ALJ found that plaintiff is unable to perform her past relevant work.  He concluded that plaintiff's testimony was not credible because it was inconsistent with the medical evidence and with her statements to medical sources.  Plaintiff does not challenge the ALJ's credibility findings.  The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness.  ***Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).**  The credibility findings should not be disturbed unless they are "patently wrong."  **See** ***Jens v. Barnhart*, 347 F.3d 209, 213 (7$_{th}$ Cir. 2003)**.  The ALJ is not patently wrong here.

The ALJ found that plaintiff has the residual functional capacity to perform a limited

range of light work activity.

Plaintiff's sole point is that the ALJ erred in giving too much weight to the functional capacity assessment done at HealthSouth in September, 2000, and not enough weight to the assessment by Dr. Yasmeen in July, 2005.  The reasons asserted are that the HealthSouth assessment was five years old and was done before the second car accident and before the MRI was done in 2004.  According to plaintiff, Dr. Yasmeen's assessment was the only assessment which reflected all of the changes in plaintiff's condition and her opinion should have been given controlling weight.

The ALJ explained that he was giving only modest weight to Dr. Yasmeen's opinions because her opinions are not consistent with the evidence, including her own findings.  The ALJ pointed out that Dr. Yasmeen's records indicated no problems with gait or motor strength and no significant tenderness over the lumbosacral area, which is not consistent with the doctor's statement that plaintiff is limited to walking/standing only 2 hours, has limited lower extremity push/pull ability, and reaching limitations.  (Tr. 15).

The ALJ is to give controlling weight to a treating doctor's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." **20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir.2003).**  If the treating source's opinion is not given controlling weight, the weight to be assigned to it is to be determined by applying the factors specified in § 404.1527(d)(2).  These factors include the length of the treatment relationship, the frequency of examination, supportability, consistency with the record as a whole, and specialization of the treating doctor.

In ***Hofslien v. Barnhart*, 439 F.3d 375 (7th Cir. 2006)**, the Seventh Circuit observed that the meaning and utility of the "treating physician" rule is uncertain and that the rule is, therefore,

of little guidance. "It is time that the Social Security Administration reexamined the rule." ***Hofslien*, 439 F.3d at 376.**

If the treating doctor's opinion is not entitled to controlling weight because it is not supported by medically acceptable clinical and laboratory diagnostic techniques and it is not consistent with the other substantial evidence, the treating doctor's opinion is not entitled to any presumptive weight.  Rather, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh."  ***Hofslien*, 439 F.3d at 377.**

Here, there is no clinical evidence supporting the limitations found by Dr. Yasmeen.  Dr. Yasmeen's records do not indicate that she did any testing of plaintiff's ability to walk, stand, or sit for any period of time, or that she measured plaintiff's ability to lift and carry any particular amount of weight.  There is no indication that Dr. Yasmeen actually saw plaintiff on or near the date on which she filled out the assessment form; the assessment form was dated July 25, 2005, and the last noted examination was on April 11, 2005. (Tr. 225).  On that visit, plaintiff was seen for right ear pain, and there are no notes about her back or legs.  The visit before that was on December 6, 2004.  On that date, plaintiff was seen for chronic back pain and difficulty in sleeping.  Her exam showed she was in "no distress" and had no significant tenderness in her lumbosacral spine.  She was moving all extremities and her sensation was grossly intact.  Straight leg raising was limited bilaterally to 15 to 20 degrees.  (Tr. 227).

The only diagnostic tests referenced in Dr. Yasmeen's records are x-rays and the MRI discussed above.  However, there is no explanation in the doctor's records of how the x-ray or MRI findings support the functional restrictions which she found.  Dr. Yasmeen's clinical findings do not support the restrictions.  "[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."  ***Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)**.  See also, ***Smith v.***

*Apfel*, **231 F.3d 433, 440 (7th Cir.2000)**, in which the Seventh Circuit affirmed an ALJ's rejection of a treating physician's opinion where it was supported only by the plaintiff's subjective complaints.

The HealthSouth evaluation, on the other hand, was supported by detailed records of testing of plaintiff's abilities in a number of areas. (Tr. 122-153). It is obviously true that the HealthSouth evaluation was done before the second accident. However, according to Dr. Yasmeen's records, plaintiff's symptoms do not seem to have changed after the second accident. Her complaints to Dr. Yasmeen and the findings on examinations remained constant. **See,** *Johansen v. Barnhart*, **314 F.3d 283, 287 (7th Cir. 2002)** (light work restriction still appropriate 4 years later where, despite increase in size of disc herniation, the claimaint's symptoms were relatively unchanged.)

The decision of the ALJ not to give controlling weight to Dr. Yasmeen's opinion is not erroneous. While reasonable minds might differ as to whether Ms. Glenn is disabled within the meaning of the relevant standards, the ALJ's decision is supported by substantial evidence in the record. **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995));** *Richardson v. Perales*, **402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

After careful review of the record and of the briefs of the parties, this court is convinced that the ALJ's decision is supported by substantial evidence in the record, and that no errors of law were made.

## Recommendation

For the aforesaid reasons, this court recommends that the final decision of the Commissioner of Social Security finding that plaintiff Brenda D. Glenn is not disabled, and therefore not entitled to Supplemental Security Income, be **AFFIRMED**.

Objections to this report and recommendation must be filed on or before March 8, 2006.

**Submitted: February 16, 2007.**


        <u>s/ Clifford J. Proud</u>
        **CLIFFORD J. PROUD**
        **UNITED STATES MAGISTRATE JUDGE**

-13-